UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JONATHAN** | * | **CIVIL ACTION** |
| | * | |
| **RAMOS VERSUS** | * | **NO. 19-11202** |
| | * | |
| **IRON MOUNTAIN SECURE** | * | **SECTION: "L" (4)** |
| **SHREDDING INC., ET AL.** | * | |
| | * | |

**ORDER AND REASONS**

Before the Court is Defendant Iron Mountain's Motion to Exclude the opinion testimony of Plaintiff's expert Mitchell A. Wood under *Daubert*. R. Doc. 88; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Plaintiff has responded in opposition. R. Doc. 96. Having considered the briefing and relevant law, the Court rules as follows.

I.   BACKGROUND

Plaintiff Jonathan Ramos brought this suit to recover for personal injuries he allegedly suffered at the facility of Defendant Iron Mountain Information Management, LLC ("Iron Mountain") in the course of his employment with Rackmasters, Inc. ("Rackmasters"). Plaintiff alleges that on June 15, 2018, Rackmasters sent him to Iron Mountain's storage facility in Harahan, Louisiana to dismantle storage racks. R. Doc. 1 at 2. Plaintiff alleges that, while he was working on a "scissor lift" with a coworker, several racks suddenly fell onto the scissor lift, causing Plaintiff to fall 18-20 feet to the ground, where the racks landed on top of him. *Id.* at 3. Plaintiff alleges that this accident caused him to sustain severe injuries requiring spine surgery, inpatient hospitalization, and pain management. *Id.* Plaintiff asserts that Iron Mountain is liable for the accident because it failed to provide a safe building in which Plaintiff could perform his tasks; failed to provide safety railings or scaffolding; and failed to warn Plaintiff against the vice, ruin, or defects of the racks, the bolts connecting them to the floor, or the concrete flooring. *Id.* at 3-4. Plaintiff seeks damages for physical pain and suffering, mental pain and suffering, lost earnings, lost earning capacity, medical expenses, permanent injury, and loss of enjoyment of life. *Id.* at 4. Plaintiff avers that there is

diversity jurisdiction because he is a citizen of California while Iron Mountain is incorporated in Delaware and the amount in controversy exceeds $75,000. *Id.* at 1-2.

In its Answer, Iron Mountain generally denies Plaintiff's allegations and asserts defenses including that Plaintiff's alleged damages were caused by the negligence of others and that no act or omission of Iron Mountain was a factor in the accident. R. Doc. 4. Rackmasters (Plaintiff's employer) and Markel Insurance Company (Rackmasters' insurer) filed a Petition of Intervention on March 17, 2020, seeking to recover for the workers' compensation, medical expenses, and other expenses they have paid or will pay due to Plaintiff's injuries. R. Doc. 25. On September 15, 2020, Iron Mountain filed an amended Answer asserting a crossclaim against Hammerhead LLC ("Hammerhead"), alleging that Iron Mountain had contracted with Hammerhead to remove the racks in its New Orleans, and Hammerhead LLC subcontracted the rack removal to Rackmasters. R. Doc. 37. However, on June 7, 2021, the Court granted Iron Mountain's motion to dismiss its crossclaim against Hammerhead. R. Doc. 61.

## II.  PRESENT MOTION

Pending before the Court is Defendant Iron Mountain's motion under *Daubert* to exclude Plaintiff's expert testimony from Mitchell A. Wood, Plaintiff's expert architect and contractor. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Iron Mountain argues that Mr. Wood is unqualified to offer expert testimony in this matter and objects that there is insufficient footing for Mr. Wood's alleged findings. Specifically, Iron Mountain argues that Wood's opinions are not sufficiently reliable to be admissible under *Daubert*.

## III.  APPLICABLE LAW

Federal Rule of Evidence 702 provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert*, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S.at 589. To be reliable, expert testimony must be based on "scientific knowledge," meaning it must be "ground[ed] in the methods and procedures of science" and based on "more than subjective belief or unsupported speculation." *Id.* at 589-90. However, this rule does not require the testimony to be based on a scientific study, but allows testimony based on "personal experience" if, in the trial court's view, there is a sufficient level of "intellectual rigor" underlying the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Indeed, "reliance upon extensive personal experience or specialized knowledge is an acceptable ground for the admission of expert testimony." *Derouen v. Hercules Liftboat Co., LLC*, No. CV 13-4805, 2015 WL 13528499, at *3 (E.D. La. Sept. 4, 2015). When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).

In *Daubert*, the Supreme Court articulated a two-prong test for determining the admissibility of expert testimony. Specifically, when faced with a proffer of expert testimony, "the trial judge must determine at the outset. . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595. The Supreme Court in *Daubert* also noted that this analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

IV. **DISCUSSION**

Both prongs of the *Daubert* analysis are at issue here.

    a. **Reliability**

"To qualify as an expert, 'the witness must have such knowledge or experience in his field or

calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992). Iron Mountain argues that Wood does not qualify as an expert with sufficient scientific knowledge or experience in this case, pointing out that Wood is not a professional engineer. Ramos responds that Wood has been a licensed architect for 34 years and a licensed general contractor for 28 years, has a B.S. in Civil Engineering, and has been qualified and accepted as an expert witness in all three federal districts within Louisiana, as well as in many Louisiana state courts. R. Doc. 96 at 4–5. He asserts that Wood is "uniquely well qualified to offer expert testimony in this case because he is personally familiar with rack systems, and Iron Mountain systems in particular, due to his experience in design and repairs of the Iron Mountain facility in Port Allen, and his familiarity with how rack systems are installed and built." *Id.* At 5.

The Court finds that Wood's opinions are sufficiently reliable under Rule 702 and *Daubert*. Wood is trained in engineering and licensed as an architect and contractor. Wood's testimony involves the design of the rack system and related customs within the construction industry. As a licensed architect and general contractor, Mr. Wood is qualified to render opinion testimony on both subjects. Further, Mr. Wood's testimony is based on his specialized knowledge developed over a career working on similar projects. He testified that he is personally familiar with rack systems, and with Iron Mountain's systems in particular due to having previously worked on designing and repairing a different Iron Mountain facility.  He testified that this experience gives him an in-depth understanding of rack systems and how they are built. Additionally, Wood has extensive experience inspecting facilities with similar rack systems for safety from his tenue as a Louisiana Fire Marshall. Accordingly, Wood's opinions are sufficiently reliable.

    b. **Helpfulness**

Ramos points out that most jurors are not familiar with self-supporting metal framed shelving rack systems, or the rules and customs applicable to the construction industry. Accordingly, he argues that Wood's specialized knowledge would assist a jury in understanding the rack system,

and how and why it collapsed. On the other hand, Iron Mountain claims that Wood's affidavit provides only conclusory opinions finding Iron Mountain liable for the instant injury and provides no clear explanation for his conclusions grounded in method or substance. Accordingly, they argue that Wood's opinions do not contribute any specialized knowledge, lack foundation, and would thus not aid a jury in resolving any factual dispute.

The Court denies Iron Mountain's *Daubert* motion on this prong as well. Wood offers expert opinion testimony that the method by which Iron Mountain requested the racks be disassembled was unsafe and led to the collapse which injured Ramos. He would also testify about relevant construction industry customs. Wood would testify, based on his knowledge, experience, and review of the data in this case, that it was reasonable for Ramos to assume that Iron Mountain's rack system was stable and that the support beams were secured to the wall and properly anchored. He would testify to his conclusion that this lack of bracing was the prima facie cause of the collapse during which Ramos was injured. Ultimately, a jury may reject Wood's conclusions, but weighing expert opinions is the purview of the jury, not the Court.

## V. CONCLUSION

For the foregoing reasons, Defendant Iron Mountain's *Daubert* motion is **DENIED**.

New Orleans, Louisiana, this 19th day of July, 2022.

_____
**UNITED STATES DISTRICT JUDGE**