UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JONATHAN RAMOS | * | CIVIL ACTION NO. 2:19-CV-11202 |
| | * | |
| Plaintiff | * | SECTION: "F" (4) |
| | * | |
| VERSUS | * | DISTRICT JUDGE: |
| | * |     ELDON E. FALLON |
| IRON MOUNTAIN SECURE SHREDDING | * | |
| INC., ET AL. | * | MAGISTRATE JUDGE: |
| | * |     KAREN WELLS ROBY |
| Defendants | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes Defendant, Iron Mountain Information Management L.L.C. ("Iron Mountain"), who respectfully submits this Supplemental Memorandum in Support of its Motion for Summary Judgement. Iron Mountain has recently taken the corporate deposition of Rackmasters, Inc. ("Rackmasters"), in which the deponent, Brian Maclean provided testimony that further supports Iron Mountain's Motion for Summary Judgment, as will be further discussed below. Iron Mountain also adopts and incorporates by reference all the arguments raised in its Original Motion for Summary Judgment, and Memorandum in Support of Same.

    **I.    BRIAN MACLEAN'S TESTIMONY ESTABLISHES THAT IRON MOUNTAIN WAS NOT AT FAULT FOR THE SUBJECT ACCIDENT**

Brian Maclean was the CEO of Rackmasters, Inc.[1] He has forty years' experience in the field of rack system assembly and disassembly.[2] Maclean was familiar with the design and installation of the rack system at the Iron Mountain facility.[3] He disassembled similar rack system

---

[1] See, Ex. "I," Brian N. Maclean's Deposition Testimony (July 11, 2022), at p. 11:8-10.
[2] Exhibit I, at p. 12:18-23.
[3] Exhibit I, at p. 18:21-19:6.

many times throughout his career.[4]  Rackmasters accepts responsibility for the rack system failure in this case.[5]  Rackmasters admits the rack system failure in this case was due to a terrible mistake by Rackmasters's foreman, Glen Thomas.[6]

The handrails/support beams on the last row of shelving should have been removed before the catwalk flooring was disassembled from the floor supports.[7]  Mr. Thomas, however, had his crew disassemble the catwalk flooring *before* removing the handrails/support beams.[8]  The weight of the handrails/support beams made the remaining structure top heavy once the catwalk was disassembled.[9] This method of disassembly was the cause of the collapse.[10]

> Q. Okay. And this is the very last part of the project, right?
>
> A. Yes.
>
> Q. And, essentially, what's left is you've got this catwalk system that's still up, right?
>
> A. Yes.
>
> Q. And it was safe to walk on for anybody up until that point because it's got -- it would have had columns holding it up and supporting it on the other side when the rack system was still there?
>
> A. Yes.
>
> Q. Somebody, presumably the Adecco employees or the Rackmasters employees, disassembled those columns so it was exposed, to where now it would be unsafe to walk across the cat system because these cross footings are no longer supported, right?
>
> A. Right.
>
> Q. So nobody was accessing the catwalk system at that time?
>
> A. No.

---

[4] Exhibit I, at p. 12:18-23
[5] Exhibit I, p. 54:8-10.
[6] Exhibit I, p. 47:20-24.
[7] Exhibit I, p. 58:3-8.
[8] Exhibit I, p. 22:16-23:9
[9] Exhibit I, p. 32:6-15.
[10] Exhibit I, p. 35:2-10.

Q. In fact, it was being disassembled for that reason, there was no longer -- it was coming

down?

A. Yes.

Q. What you're saying is, before they had done all of that, they should have removed -- Rackmasters should have removed those handrail bracings?

A. Handrail load beams, yes.

Q. And that -- if that had been done, then the catwalk system could have been further disassembled and brought down safely?

A. Yes.

Q. And because it was top-heavy and the handrails were not removed before disassembling the catwalk portion of the rack system, that's what caused it to topple over and fall?

A. Yes.[11]

Maclean confirmed that this rack system failure had nothing to do with an alleged lack of bracing to adjacent walls or an inadequate number of floor anchors.[12] This is a self-supporting rack system.[13] There is no expected bracing to adjacent walls.[14] Also, the anchors would have done nothing to prevent the top-heavy structure from toppling over.[15]

Q. Okay. This guy, Mitchell Wood, I mentioned earlier -- he said that Rackmasters was under the assumption that these columns were secured to the adjacent warehouse wall. And that's -- you're saying that they're wrong?

A. Yep. If -- if they were, they shouldn't have been. It's a sheetrock wall.

Q. And if they were, Rackmasters certainly would not have relied on that as --

A. No.

Q. -- as making it safe to disassemble in any other, different way than you've already testified about?

---

[11] Exhibit I, p. 71:6-72-21.
[12] Exhibit I, p. 38:21-39-19.
[13] Exhibit I, p. 38:25-39:2.
[14] Exhibit I, p. 40:4-18.
[15] Exhibit I, p. 42:11-18.

A. No, we would have – we would have seen the – the – the attachments and then unattached them, you know, taken them apart.[16]

\*   \*   \*

Q. And looking at the photo that we've attached as Exhibit A, the anchor is the part where the column meets the floor, correct?

A. Yes.

Q. And it appears to be that these columns are still anchored here, they just -- because the top-heaviness of the structure, it fell forward, right?

A. Yes, and that's why -- one of the things that Glen said, that -- that he thought the anchors would hold it, and I told him no, you know.

Q. And why is that the case?

A. It's just too top-heavy. You know -- the metal is so weak on a column that with the weight up there and it -- if it starts tilting over to a certain degree, it'll rip -- you know, the anchor will just come out of the hole, you know. But that column is really thin material.

Q. So it's not intended or designed to support this top-heavy part that -- where the crossbeams' handrails are still installed?

A. No, it's basically made to keep the structure completely vertical, you know, straight, and -- and then when the earthquake comes, it doesn't shake, you know -- it doesn't move.[17]

Rackmasters does not fault Iron Mountain for anything in this case.[18] Rackmasters developed the procedure for removing the rack system.[19] Rackmasters was responsible for the removal of the rack system.[20] Rackmasters had a choice to disassemble the crossbeam handrails first before beginning with the other parts of the disassembly of this last final shelf.[21] Rackmasters understands that the incorrect disassembly method used by Glen Thomas created an instability that led to the rack system collapse.[22]

---

[16] Exhibit I, p. 59:2-19.
[17] Exhibit I, p. 42:7-43:7.
[18] Exhibit I, p. 54:4-7.
[19] Exhibit I, p. 55:11-14.
[20] Exhibit I, p. 55:15-18.
[21] Exhibit I, p. 57:19-23.
[22] Exhibit I, p. 57:24-58:8.

## II. CONCLUSION

For the reasons outline in this Supplemental Memorandum, as well as Iron Mountain's Original Memorandum in Support of Summary Judgment, Iron Mountain respectfully requests that its Motion for Summary Judgment be GRANTED.

Respectfully Submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER, WEINSTOCK & BOGART**

*s/Ryan M. Malone*
_____
**ANDREW D. WEINSTOCK (#18495)**
**CHRISTIAN B. BOGART (#22954)**
**JOSEPH G. GLASS (#25397)**
**RYAN M. MALONE (#30607)**
**LAURA L. POUSSON (#38871)**
3838 N. Causeway Blvd., Suite 2900
Metairie, Louisiana 70002
andreww@duplass.com
cbogart@duplass.com
jglass@duplass.com
rmalone@duplass.com
lpousson@duplass.com
Telephone: (504) 832-3700
Facsimile: (504) 837-3119
**Counsel for Defendant, Iron Mountain Information Management LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July 2022, a copy of the foregoing pleading was filed electronically with the Clerk of Court. Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic filing system.

*s/Ryan M. Malone*
_____
**RYAN M. MALONE**