UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JONATHAN RAMOS<br><br>    Plaintiff,<br><br>v.<br><br>IRON MOUNTAIN SECURE SHREDDING, INC., IRON MOUNTAIN INFORMATION MANAGEMENT, INC., IRON MOUNTAIN INCORPORATED, and IRON MOUNTAIN MANAGEMENT SERVICES, INC.<br><br>    Defendants. | CIVIL ACTION NO. 2:19-CV-11202<br><br>DISTRICT COURT JUDGE:<br>ELDON E. FALLON<br><br>MAGISTRATE JUDGE:<br>KAREN WELLS ROBY |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF UNCONTESTED MATERIAL FACTS**

Plaintiff Jonathan Ramos respectfully submits statement of contested material facts in response to Defendants' statement of facts not reasonably dispute (R. Doc. 98-1) in connection with their motion for summary judgment:

**RESPONSE TO DEFENDANTS' STATEMENT**

1.  Uncontested.

2.  Uncontested. However, the support columns—not the shelves—collapsed.[1]

3.  Uncontested.

4.  Uncontested.

5.  Uncontested.

6.  Uncontested.

---

[1] Ex. 1, Affidavit of Wood, at para. 13; Ex. 3, Ramos Dep., at Tr. 31:23 – 32:6; See also, Exhibit 11, Photos of Fallen Columns.

1

  7.  Uncontested.

  8.  Uncontested.

  9.  Uncontested.

  **RESPONDING FURTHER**, plaintiff submits the following list of contested material facts, which bear on the motion at bar:

  1.  IMIM occupied the warehouse space at 6200 Humphreys Street for 21 years prior to vacating the building in 2018.[2]

  2.  IMIM hired Hammerhead, LLC, to perform the "disassembly of the open file and box storage rivet style catwalk system in rooms 2 and 3, including 1,161 units of shelving at 23' tall, all bar-grating aisles, stairways and sprinkler system."[3]

  3.  In their master agreement, IMIM requires Hammerhead to follow their "policies and procedures related to safety and security"[4] and designated local managers to coordinate project delivery.[5]

  4.  Thomas received from IMIM a paper copy of the rack system, and the copy did not specify the beams or columns nor the back stairwell.[6] Thomas testified is very important the plans are accurate.[7]

  5.  Thomas advised IMIM that Rackmasters would tear down the front staircase first.[8]

  6.  As the job was about to begin, an IMIM representative, who was known to be "some kind of manager", instructed Thomas that IMIM "need the staircase to stay up."[9] The front

---

[2] Exhibit 8, 1997 Property Lease; Exhibit 9, June 7, 2018 Letter (at IMIM 46).
[3] Exhibit 6, May 21, 2018 Hammerhead Letter (at IMIM 40).
[4] IMIM Master Agreement, (Def. Ex. I) (R. Doc. 98-13, at p. 30).
[5] IMIM Master Agreement, (Def. Ex. I) (R. Doc. 98-13, at p. 36).
[6] Ex. 2, Thomas Dep., at Tr. 32:9 – 33:11.
[7] Ex. 2, Thomas Dep., at Tr. 32:9 – 33:11.
[8] Ex. 2, Thomas Dep., at Tr. 18:8 – 19:11.
[9] Ex. 2, Thomas Dep., at Tr. 21:5 – 25.

staircase[10] that IMIM required to remain up until the end allowed access to building 2 on the other side of the center wall.[11]

7. If Rackmasters were permitted to make their own decision on how to disassemble the racks, Thomas testified he "would have torn the stairwell down first. That just would have been the way I would have done this. But again, we were asked not to, so we did it a different way. So we left the catwalk up to the very end."[12]

8. The reason Rackmasters did not disassemble the bays using that method is because IMIM imposed a last-minute condition that the stairs had to remain in place.[13]

9. IMIM's required disassembly method introduced the risk of columns toppling over.[14]

10. OSHA concluded the metal support beams hit the scissor lift carrying Ramos, knocking it over,[15] because "the support beams were not securely attached to the wall before they fell away from the wall."[16]

11. Mr. Wood concluded the "final section of rack adjacent to the wall did not have bracing, and were not securely attached to 'structure'. Their 'uprights' or rack columns were not secured to the adjacent walls."[17]

12. The proper method of disassembling the rack system was the method originally chosen by Rackmasters—front-to-back—which method would retain structural support of the

---

[10] See, e.g. Exhibit 7, Front Staircase (IMIM 5).
[11] Ex. 2, Thomas Dep., at Tr. 20:4 – 20.
[12] Ex. 2, Thomas Dep., at Tr. 46:19 –23.
[13] Ex. 2, Thomas Dep., at Tr. 47:6 – 8.
[14] Ex. 3, Ramos Dep., at Tr. 52:22 – 53:6; Ex. 4, Wood Dep., at Tr. 31:18 – 32:11; Ex. 4, Wood Dep., at Tr. 27:3 – 28:14.
[15] Ex. 5, OSHA Report Narrative, at IMIM 342.
[16] Ex. 5, OSHA Report Narrative, at IMIM 340 -341.
[17] Ex. 1, Affidavit of Wood, at para. 13.

cross beams, columns, and support members left intact at the edge, which is typical of a shelving system.[18]

13. The hazardous condition would not have occurred except for IMIM's requirement that the stairway remain in place.[19]

**Respectfully Submitted:**

**BRUNO & BRUNO, LLP**


 */s/ Daniel A. Meyer*
Joseph M. Bruno, Sr. (La. Bar No. 3604)
Daniel A. Meyer (La. Bar No. 33278)
855 Baronne Street
New Orleans, LA 70115
Telephone: (504)-525-1335
Facsimile: (504)-561-6775
jbruno@brunobrunolaw.com
dmeyer@brunobrunolaw.com
*Counsel for Jonathan Ramos*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading upon all counsel of record by electronic filing through CM/ECF, or other electronic transmission this July 26, 2022.

 */s/ Daniel A. Meyer*
Daniel A. Meyer

---

[18] Ex. 4, Wood Dep., at Tr. 29:19– 32:4.
[19] Ex. 1, Affidavit of Wood, at para. 20.