# ARCHITECTNIX
A Professional Architectural Corporation

ARCHITECTURE • PLANNING • CODE REVIEW • PROJECT MANAGEMENT

Ramos vs. Iron Mountain

## AFFIDAVIT OF MITCHELL A. WOOD RA EIT ICC CAPS

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, duly commissioned and qualified in and for the Parish of East Baton Rouge, State of Louisiana, personally came and appeared

### MITCHELL A. WOOD

Who are first being duly sworn, did depose and say that:

1. That I am over 21 years of age, I am of sound mind and have personal knowledge of the facts set forth herein.

2. I have Master's and Bachelor's Degrees of Architecture from Tulane University, and a Bachelor of Science Degree in Civil Engineering from Louisiana State University. I was in the Master of Business Administration program at University of Maryland for 2 years while employed by Marriott Corporation outside Washington, DC.

3. I have been a licensed architect for 34 years in Louisiana. I am also a licensed commercial general contractor, as well as a licensed residential builder in Louisiana for over 28 years. I have a license for Inspection in Louisiana – which is currently inactive. While working for the State Fire Marshal of Louisiana, I received certification for compliance review for ADAAG (American with Disabilities Act) and NFPA 101: Life Safety Code.

4. I am the principal and owner of **ArchitectniX, APAC,** an architectural design & planning firm based in Baton Rouge, Louisiana. Besides residential & commercial design services, the firm does building / safety code review, site inspection and project management.

5. I am the manager and owner of **Century Building Services, LLC,** a licensed and insured residential and commercial builder based in Baton Rouge, Louisiana. Our design and construction firms have been licensed to practice in Louisiana since 1991. Both firms are in good standing with the Licensing Boards of Louisiana, and have continually maintained their licenses for 29 straight years including continuing education.

6. My construction firm has been responsible for the building and remodeling of numerous commercial facilities including Iron Mountain in Port Allen, LA. The remedial work involved interior and exterior renovation and repairs including lighting,

EXHIBIT
1

1

7. hardware, flooring, fencing and drainage.work at the facility Our firms are fully cognizant of the importance of site safety related to employees, pedestrian and vehicular traffic. Our firm is fully cognizant of OSHA guidelines in particular with fall protection and providing a safe working environment for employees and visitors. Our work has included supervising and erecting metal buildings inside industrial plants and following their requisite strict safety protocols. Century has never been cited by OSHA 200 Log for work violations, and incurred any OSHA citations.

8. In the past 28 years, I have been qualified and accepted in Louisiana Federal and State Courts as an expert witness in the fields of construction, inspection, project management and site safety, architecture/ design, and Codes related to building, handicapped accessibility and Life Safety. I have never been disqualified in court as an expert witness.

9. My methodology in determining my opinion in this affidavit related to Jonathan Ramos (plaintiff) vs. Iron Mountain Inc. et.al (defendants is based on one or more of the following: a) Contract Rules for Exxon Chemical Co. - Safety b) Wal Mart Safety Manual c). US Dept. of Labor OSHA 3146 Fall Protection d) OSHA 1910 & 1926 General Industry Regulations

10. The following documents regarding Civil Action No. 2:19-CV-11202 as provided by counsel to assist in formulating my assessment and opinion are a) U.S Dept. of Labor OSHA report –Inspection no. 1323824 with witness statements and accident photograph dated June 19th, 2018 b) Video camera footage [that captured the accident after the scissor lift tipped over and its occupants lying on the concrete floor] c) Petition for Damages filed June 13th, 2019 and Amended Complaint d) Jonathan Ramos deposition on October 20th, 2020 and e) Letter from Hammerhead dated May 21st, 2018.

11. Mr. Jonathan Ramos, the plaintiff, was severely injured from a fall while employed by Rack Masters, Inc. on a work site inside the Iron Mountain facility located 6200 Humphreys St. in Harahan, Louisiana 70123.Mr. Ramos started working at the site on approx. May 30th, 2018. The accident occurred on June 15th, 2018. While performing the task of taking down and removing metal shelvingh storage racks, the scissor lift holding Mr. Ramos and another employee were struck by unsecured 'support beams' which are shown in the OSHAReport photographs..

12. The force of the falling support beams caused their lift and its occupants to topple over, resulting in Mr. Ramos. falling 18 to 20 ft.to the ground. The fallen support beams fell on top of Mr. Ramos. His injuries required spine surgery and hospitalization.

ARCHITECTNIX
A Professional Architectural Corporation
P. O. BOX 82881   BATON ROUGE, LA 70884-2881
TEL: 225.766.5200   FAX: 225.766.5562
www.architectnix.com

2

13. As noted by the OSHA report, the tall support beams and final section of rack adjacent to the wall did not have bracing, and were not securely attached to 'structure'. Their 'uprights' or rack columns were bolted to the floor; however, the series of racks were not secured to the adjacent wall(s) of the building. The lack of bracing was the *prima facie* cause these support beams and piece of rack toppled over, and struck the lift.  The large multi- person scissor lift, by its design, could not arrest the fall of the series of wire shelving racks and their 'uprights'. According to the Complaint and Mr. Ramos Deposition, there was no warning prior to the wire racks shifting and striking the men high up on the lift.

14. The OSHA 89 report details in its photos "the support beams were not securely attached to the wall BEFORE they fell away from the wall".  The safety issue is why this long series of 'uprights and support beams' were left unsecured and subject to falling.

15. According to a signed statement in the OSHA Report by Mr. Glen Thomas, the foreman for Rack Masters, he spent the 1st day on site (5/30/2018) assessing the project.  Mr. Thomas told Iron Management that I need to tear down the stairways. But Iron Mountain wanted the stairs to remain in place to the very end.

16. In Mr. Ramos deposition, he testified "[Iron Mountain] still had their employees going in and out of the other half of the warehouse. Like I told you what was connecting where they were working, there were stairways on our end of the building going up to the floor to the mezzanine level. So their employees had to go in and be able to do what they were supposed to do. So they instructed us to keep the stairs up, which made us go a different route.  We usually clear out a building from *front to the back*. So we had to work for the '*right' side of the building to the 'left*' just to leave the stairs open for them to go up and down from the other building".

17. Both Mr. Thomas and Mr. Ramos reiterated that Iron Mountain instructed Rack Masters to remove the shelving that was different and 'counter' than their recommended method in order for the stairways to remain in place.

18. In regard to the effect working from 'right to left' instead of 'back to front', :Mr. Ramos testified "Since we had to work '*left and right*' and leave the stairways up, the columns –this is the wall.  The columns –if we would have worked the way that we usually worked, the columns would never been there. Like, we would have worked steadily from the *front to the back* removing the columns (uprights) as we went – eliminating the possibility of them falling over."



A Professional Architectural Corporation
P. O. BOX 82881    BATON ROUGE, LA 70884-2881
TEL: 225.766.5200   FAX: 225.766.5562
www.architectnix.com

19. The procedure dictated to Rack Masters and their employees was to dis-assemble the storage racks (and their supports) from 'left to right'.  Iron Mountain, acting as the employer and  manager of the project,  instructed Rack Masters not to proceed from their standard '*front to back*' method of dis-assembly.  The employers reasoning   for this major method change was to not move or impact the existing stairway(s).

20.  Rack Masters was cited by OSHA related to the lack of an engineering survey being performed PRIOR to demolition of the storage racks. Nonetheless, the hazardous conditions, which resulted in the injuries to Mr. Ramos, would not have occurred EXCEPT for Iron Mountain's management requirement the stairways remain in place. Iron Mountain's management failed in their duty to properly protect their Contractor and their employees working inside their facility; in addition, Iron Mountain failed to address the risk exposure of a serious work place injury due to their negligence.

21. Mr. Jonathan Ramos, through no fault of his own, was injured due to the building NOT permitting the recommended dis-assembly method used by his company AND recommended by Mr. Thomas.  The Iron Mountain should have been cognizant that these high unbraced horizontal support beams could shift, or surely had known they were not properly secured to the wall.  Safety rules would dictate no allowable movement of these beams and their columns. If the dis-assembly method had been from *front to back* as recommended, there would be no exposure to dangerous movement. Predictably, the support beams' collapse was sudden, without warning, and hazardous.

22. Accordingly, I hold the right to amend my opinion upon the review of additional information becoming available on this case.]

Mitchell A. Wood   RA ICC EIT CAPS
Principal

*Feb. 4th 2021*
Date

# ArchitectniX
A Professional Architectural Corporation