## NET LEASE AGREEMENT

**State of Louisiana**

**Parish of Jefferson**

THIS LEASE AGREEMENT, made and entered into between **ROBERT W. MERRICK**, hereinafter referred to as "Lessor", and

**Himscorp of New Orleans, Inc., d/b/a Record Masters**

hereinafter referred to as "Lessee",

### WITNESSETH:

1. **LEASED PREMISES:**

In consideration of the rent, terms, provisions, and their mutual covenants, Lessor does hereby let and demise unto Lessee, and Lessee does hereby take and hire from Lessor the following described real property, to wit: <u>Unit F (expanded) containing 51,500 square feet and Unit FF (old LL&E space) containing 15,000 square feet for a total of 66,500 square feet.</u>

Units <u>F&FF,</u> 6200 Humphreys Street, Harahan, Louisiana 70123, being a portion of a multi-tenant building containing approximately 262,500 square feet as outlined on Exhibit "A" attached hereto.

2. **TERM:**

The term of this lease is <u>five (5) years</u>, commencing <u>July 1, 1997</u> and ending <u>June 30, 2002</u>. Lessor grants Lessee two five (5) year options, six months written notice required for each renewal period, under the same terms and conditions except the yearly rental shall be adjusted in accordance with Paragraph 3.

3. **RENT:**

Lessee agrees to pay rent for the Leased Premises during the term of this lease in the amount of <u>(see attached addendum)</u> Dollars per year, payable in monthly installments of _____
_____ Dollars for the first five (5) years of the lease and _____
_____ Dollars per year payable in monthly installments of _____
_____ Dollars for the second five (5) years of this lease, which amount shall be payable to Lessor at the address shown below on the first day of each month. One montly installment of rent shall be due and payable on the date of execution of this Lease for the first month's rent, and a like monthly installment shall be due and payable on or before the first day of each calendar month succeeding the commencement date during the term of this lease; provided that should the commencement date be other than the first day of the calendar month, the rental for that month only shall be prorated to the end of that calendar month.

Rental for the first option period shall be <u>fair rental rate as established between Lessor and Lessee</u> per year payable in monthly installments of _____ Dollars per month and rental for the second option period shall be _____
_____ per year payable in monthly installments of _____
_____ per month.

One the date of the execution of this Lease by Lessee, there shall be due and payable by Lessee a security deposit in the amount of one monthly installment to be held by Lessor for the performance of Lessee's covenants and obligations under this lease, it being expressly understood that this security deposit shall be considered an advance payment of rental or a measure of the lessor's damage in case of a default by Lessee. Upon the occurrence of any event of default by Lessee or breach by Lessee of Lessee's covenants under this lease, Lessor may from time to time, without prejudice to any other remedy, use this security deposit to the extent necessary to make good any arrears of rent and/or any damage, injury, expense or liability caused to Lessor by the event of such default or breach of covenant. Any portion of the security deposit so used shall be replaced to Lessor within thirty (30) days of notification by Lessor of the amount and circumstances of such usage. Failure of Lessee to replace the security deposit timely shall be considered a breach of Paragraph 19(b) of this Lease. Any balance of the security deposit remaining at the expiration of this lease shall be returned to Lessee.

**EXHIBIT 8**

IMIM_000124

Other remedies for nonpayment of rent notwithstanding, if the monthly rental payment is not received by Lessor on or before the tenth day of the month for which the rent is due, a service charge of five percent (5%) of all past due amounts owned on such date shall become due and payable in addition to the regular rent due under this lease.

### 4. REPRESENTATION OF OWNERSHIP; QUIET ENJOYMENT:

Lessor warrants and represents that it is the owner of the Leased Premises and has the right to enter into this lease agreement; that it has exercised due diligence to insure proper materials and workmanship in the construction of the Leased Premises; and that the Lessee, upon paying the rent herein provided and performing all of the terms and conditions required on it part under this lease shall peaceable and quietly have, hold and enjoy the Leased Premises during the full term of this lease and any extensions thereof.

### 5. BINDING EFFECT:

This lease may not be changed, modified, or discharged except by a writing signed by Lessor and Lessee  All covenants conditions and obligations contained herein shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors in interest, purchasers or assigns of Lessor and Lessee to the same extent as if each successor, purchaser or assign were named as a party to this lease.

### 6. TAXES:

During the term of this lease and any extension thereof, in addition to the rent provided for therein, Lessee shall pay as additional rent its pro-rata share of any real estate tax imposed or assessed on the entire land and building(s) of which the Leased Premises forms a part:

Lessee's proportionate share of said real estate tax shall be <u>25.33%</u>, the percentage derived by dividing the number of square feet of rentable space leased by Lessee, <u>66,500 square feet</u> by the total number of square feet of rentable space in the buildings of which the Leased Premises forms a part (262,500 square feet).

Lessee's share of said real estate tax shall be due and payable within thirty (30) days of presentation of appropriate tax bill substantiating tax to be paid.

Lessor agrees to promptly notify the Lessee of any increase or proposed increase in real estate tax and assessment of which Lessor has knowledge. Lessee shall have the right to contest by appropriate legal action the amount and validity of any tax assessment or charge which it is required to pay under the terms of this section. Lessor shall, at the request of Lessee, join or otherwise assist in any such proceeding.

In addition, to all other payments required to be paid by Lessee under this paragraph, and in the same manner as set forth therein, Lessee shall pay its pro-rata share of any other taxes, assessments or levies assessed with respect to property ownership, which are not presently in effect and with which it would be chargeable as a consequence of the ownership of the Leased Premises if in fact it were the owner thereof in fee simple at the time of such assessment or levy.

### 7. INSURANCE, WAIVER OF SUBROGATION:

a)   Lessee shall at all times during the term of this lease and any extensions thereof carry and maintain at its own cost and expense, General Public Liability Insurance against claims for bodily injury or death, and property damage occurring on the Leased Premises. Such insurance shall name the Lessor as an additional insured, and shall be maintained in reasonable amounts in conformity with what is considered usual and normal coverage in the New Orleans metropolitan area, but in no event less than $500,000 combined single limit or equivalent. Upon written request, Lessee will deliver to Lessor evidence of such insurance.

b)   Lessor shall at all times during the term of this lease and any extensions thereof keep the building(s) of which the Leased Premises forms a part insured against loss by fire with extended coverage to the full insurable value thereof (which shall mean not less than the actual replacement cost on the anniversary date of the policy) including also owners liability and loss of rents during any reconstruction.

c)   Lessee shall pay as additional rent the Lessor's insurance premium required to effect the coverage specified in this paragraph. The amount to be paid by Lessee shall be the premium for the year \prior to the commencement date of this lease, payable in the same percentage and on the same basis as real estate taxes specified in Paragraph 6 of this lease agreement.

d) Lessor and Lessee hereby waive and release each other of and from all rights of recovery, claim, action or cause of action, against each other, their agents officers and employees, for any loss or damage that may occur to the Leased Premises, the building of which the Leased Premises forms a part, or the contents or personal property of either party in and around the building, by reason of fire, the elements or any other cause which could be insured against regardless of cause or origin, including negligence of Lessor or Lessee their agents, officers or employees. Lessor and Lessee agree to give written notice to their insurers of the mutual waivers included in this paragraph and to have their insurance policies endorsed if necessary to prevent their invalidation by reason of said mutual waivers.

e) Lessor shall not be liable to Lessee's employees, agents, invitees or visitors, or any other person, for any injury to person or damage to property on or about the Leased Premises whether caused by the negligence or misconduct of the Lessee, its agents or employees, or any other person entering upon the Leased Premises under express or implied invitation by the Lessee, or caused by the building and improvements located on the Leased Premises becoming out of repair, or caused by leakage of gas, oil, water or steam or electricity emanating from the Leased Premises. Lessee agrees to indemnify and hold harmless the Lessor from any loss, expenses or claims, including attorney's fees, arising out of any such damage or injury.

f) Lessee shall not permit the Leased Premises to be used for any purpose which would render the insurance thereon void. Lessee accepts responsibility and agrees to pay promptly for any increase in insurance premium on the Leased Premises or the building of which the Leased Premises forms a part, which is solely due to the conduct and operation of Lessee's business within the Leased Premises.

### 8. UTILITIES:

Lessor shall provide the normal utility service connections into the building which the Leased Premises forms a part. Lessee shall pay for all utility services, including but not limited to, initial connection charges for gas, water, sewer and electricity used on the Leased Premises, and for all electric lights, lamps or tubes, and for all utility services consumed by Lessee. Lessor shall not be required to pay for any service, upkeep or supplies used in connection with the Leased Premises, nor any deposit, fee or service charge presently in force or to be levied in the future, except that in a multi-tenant building Lessor may provide water and gas to the Leased Premises, in which case Lessee agrees to pay its pro-rata share of such water and gas service.

### 9. USAGE AND COMPLIANCE WITH LAW:

Lessee agrees that the Leased Premises shall be occupied and used for the normal conduct of Lessee's business, to wit:

storage of hospital/business records or and related services for storage.

### 10. MAINTENANCE, REPAIR, REPLACEMENT:

a) Lessor shall maintain and keep in good repair and condition the structure of the building, including the roof, exterior walls, structural steel, sewer main, sprinkler system, and electrical service to Lessee's meter, other than to repair damage caused by Lessee, Lessee's employees, agents or invitees. Lessor will enforce all manufacturers' or contractors' warranties for Lessee's benefit or will assign such warranties to Lessee to enforce.

Lessor shall not be obliged to make any repairs required of it under this paragraph unless and until it shall e notified in writing by Lessee of the need for such repair, which it shall then perform within a reasonable time. Lessor shall not be liable to Lessee for any inconvenience caused by the repairs it is required to make, nor for any damage or loss as a result of leaks, stoppage of water, sewer or drains, or for other defects in the building unless it shall fall within a reasonable time to make a repair required of it, or shall be negligent or unworkmanlike in effecting such repairs. Lessee shall not be entitled to any abatement or reduction or rent as a result of any repairs, alterations or additions made by Lessor.

b) Lessee shall perform all maintenance and repair of the Leased Premises not specifically required of Lessor under this paragraph, including but not limited to interior walls, floors, ceilings, downspouts, dock bumpers, steps, doors, windows, glass, air conditioning, ducts, heating and plumbing as well as replacement of any item of fixtures or equipment which is beyond repair.

Lessee shall take good care of the Leased Premises, its fixtures and equipment, shall create no waste or nuisance, shall keep same free of vermin and noxious odors and shall not allow trash or merchandise to be stored outside the building except in covered trash containers under trash removal contract. At the termination of this lease, Lessee shall deliver the Leased Premises "broom clean" and in

the same good order and condition as at the commencement of this lease, ordinary wear and tear and casualty damage excepted.

c) Lessee shall maintain in a safe, clean and clear condition the common areas used in conjunction with the Leased Premises, including access roads and driveways, parking and loading areas, sidewalks, landscaping, lighting, signs and all other areas and improvements which are for the general use in common of the Lessees their employees, agents and invitees. In a multi-tenant building, Lessor may contract with others for the maintenance of these common areas and Lessee shall pay as additional rent Lessee's pro-rata share of the cost of such services, including the costs and fees paid by Lessor for the management of the property including the Leased Premises, not to exceed $0.10 per square foot of Leased Premises per year. Payments required to be made by Lessee for such common area maintenance shall be made in the same manner as those prescribed for the payment of Lessee's pro-rata share of taxes and insurance under Paragraphs 6 and 7 of this Lease.

Lessor shall have the right from time to time to establish, enforce and modify reasonable rules and regulations with respect to Lessees' use of such common areas; to designate or restrict Lessees' parking areas; to alter truck traffic patterns for the benefit of all Lessees; and to do and perform other such acts as Lessor shall deem advisable for the convenience of all Lessees, provided, however, that all such rules and regulations, especially as they may relate to the designation, restriction or modification of Lessees' parking areas, shall be first discussed with Lessees prior to implementation or enforcement.

d) Should Lessee fail to perform any obligation required of it under this paragraph and, (unless same is emergency, in which event Lessor shall be obligated only to use its bona fide best efforts to contact Lessee by telephone) such failure shall continue for thirty (30) days following receipt by Lessee of written notice from Lessor, then and in that event Lessor shall be entitled but not obligated to perform such acts for the account of and at the expense of Lessee, and Lessee shall reimburse Lessor for all such expenditures within thirty (30) days of presentation of Lessor's bill covering same, together with supporting contractors' and materials invoices.

Should Lessor fail to perform any obligations required of it under this paragraph, then Lessee may avail itself of the same remedies afforded Lessor in sub-paragraph 10(d) supra.

## 11. MECHANICS LIENS:

Lessee agrees to hold Lessor harmless from all liability arising out of the filing of any mechanic's lien against the Leased Premises by reason of any act or omission of Lessee.

## 12. DAMAGE AND DESTRUCTION:

a) If the Leased Premises should be totally destroyed by fire, tornado or other casualty, or if the Leased Premises should be so damaged that rebuilding or repairs cannot reasonably be completed within thirty (30) days after the date of written notification by Lessor to Lessee of such destruction or damage, then, at Lessee's option, this lease may be terminated as of the date of such notification; Lessee shall immediately surrender the Leased Premises to Lessor, who may enter and repossess same, and Lessee shall be relieved of any further liability hereunder.

b) If Lessee does not elect to terminate this lease, or if any damage by any of the above mentioned casualties, rendering the premises wholly unfit, can be repaired within one hundred eighty (180) days, Lessor agrees to repair such damage promptly and this lease shall not be affected in any manner except that the rent shall be abated from the data of notification of damage to the date that such repairs have been completed.

Notwithstanding, Lessor shall not be obligated to repair or to rebuild under this paragraph if seventy percent (70%) or more of the basic term of this lease shall have expired.

c) If the Leased Premises shall be partially damaged by any of the above casualties so as not to be rendered wholly unfit for Lessee's occupancy, Lessor shall repair the damage promptly and during the period from the date of such damage until the repairs are completed the rent shall be apportioned so that Lessee shall pay as rent an amount which bears the same ratio to the entire monthly rent as the portion of the Leased Premises which Lessee is able to occupy without disturbance during such period bears to the entire premises. If damage is so slight that Lessee is not disturbed in its possession and enjoyment of the Premises, then Lessor shall repair same promptly and in that case the rent shall no abate.

## 13. CONDEMNATION:

a) If during the term of this lease and any extensions thereof, all of the Leased Premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation

or by right of eminent domain, or by private purchase in lieu thereof, then this lease shall terminate and the rent shall be abated during the unexpired term effective with the physical taking of said Premises.

b) If a portion of the Leased Premises should be taken for any public or quasi-public use as outlined in the preceding paragraph 13(a) and such taking would prevent or materially interfere with the use of the Leased Premises for the purpose for which they are then being used, then Lessee may terminate this lease and be relieved from all liability thereunder. If Lessee should elect not to terminate this lease, then Lessor shall, at its sole expense, reconstruct the Leased Premises as close as possible to its state before such taking, and the rent for the unexpired portion of this lease shall be adjusted proportionally.

c) In the event of any condemnation taking referred to in this paragraph, Lessee may claim compensation for moving expenses, for the loss of any installation or equipment which under the terms of this lease Lessee would have been permitted to remove at the expiration thereof, and any leasehold interest, if such award is separately allowed by the condemning authority; but Lessee shall be entitled to no additional award, it being agreed that all damages allocable to the fee simple ownership of the Leased Premises shall be payable to Lessor.

## 14. ASSIGNMENT OR SUBLEASE:

Lessee shall not assign this lease nor sublease all or any part of the Leased Premises without prior written consent of Lessor, which consent shall not be unreasonably withheld or delayed, and then only subject to all of the terms and conditions of this lease. In the event of such permitted assignment or subleasing, Lessee shall not be relieved of any of its obligations under this lease. In the event of a default by Lessee while the Leased Premises are sublet or assigned, Lessor, in addition to any other remedies provided herein or by law, may collect directly from such sublessee or assignee all rents becoming due to Lessee under such sublease or assignment, and may apply such rent against any sums due Lessor by Lessee hereunder. Such direct collection Lessor shall not relieve Lessee from further performance of all of its obligations under this lease.

## 15. SUBORDINATION TO MORTGAGE:

At the option of Lessor's mortgagee, Lessee agrees to accept this lease subordinate to any mortgage, deed of trust or encumbrance which Lessor may have placed or may hereafter place against the Leased Premises. Lessee agrees to execute upon demand any instrument which may be deemed necessary to render such mortgage, deed of trust or encumbrance whenever made, superior and prior to this lease, provided, however, that any such subordination instruments shall contain the express condition that this lease shall be recognized by all mortgagees, holders of deeds of trust, and any other lien holders; that Lessee's estate shall to be disturbed, and that all of Lessee's rights under the terms of this lease shall remain in full force and that all of Lessee's rights under the terms of this lease shall remain in full force and effect so long as Lessee shall not be in default in any of its terms and conditions.

## 16. FORCE MAJEURE:

Neither Lessor nor Lessee shall be required to perform any covenant or obligation required under this lease, or be liable in damages to the other, so long as the performance or non-performance of the covenant or obligation is delayed, caused or prevented by an act of God or force majeure.

## 17. SIGNS:

Lessee may erect signs on the exterior of the Leased Premises only with the written approval of design and location by Lessor which said approval shall not be unreasonably withheld. In no case may painted signs be applied to the building. Lessee shall remove all signs at the termination of this lease, at Lessee's sole risk and expense, and shall properly repair any damage and seal any holes caused by the removal of such signs.

## 18. LESSOR'S RIGHT OF ENTRY AND INSPECTION:

Lessor shall have the right to enter upon the Leased Premises at any reasonable time and upon reasonable notice to lessee, for the purpose of inspection, cleaning or making repairs alterations or additions which Lessor shall deem necessary or desirable; determining Lessee's use of the Leased Premises, or determining if any act of default under this lease has occurred or for the purpose of showing the building to prospective purchasers, provided that Lessee shall not be unduly inconvenienced in the conduct of its business by any such inspection entry. Lessor shall have the right to post "For Sale" signs in good taste on the Premises, at any time, and "For Lease" signs within ninety (90) days of the expiration of this lease.

### 19. DEFAULT BY LESSEE:

The following shall be deemed events of default by Lessee under this lease:

a) Lessee shall fail to pay any rent to Lessor when same is due and such failure shall continue for ten (10) days after receipt by Lessee of written notice thereof given by Lessor; except that if Lessor is required to give to Lessee two (2) such notices in any given lease year, then Lessee's failure to make timely rent payments thereafter shall become a default herein without the requirement of Lessor to give Lessee any further notice.

b) Lessee shall fail to perform any duty or obligation imposed upon it by this lease, other than the payment of rent, and such failure shall continue for thirty (30) days after receipt by Lessee of written notice thereof by Lessor.

c) Lessee shall file a petition or be adjudged bankrupt or insolvent under any section or chapter of the National Bankruptcy Act, as amended, or any similar law or statue of the United States or any state; or that a receiver or trustee shall be appointed for all or substantially all; of the assets of the Lessee; or that Lessee shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

Upon occurrence of any such events of default, Lessor shall have the option of pursuing any one or more of the following remedies without any notice or demand whatsoever:

a) Terminate this lease, in which event Lessee shall immediately surrender the Leased Premises to Lessor, and Lessor may reenter the Leased Premises using whatever means may be necessary to effect entry and re-let same on the best terms and for the highest rent immediately available. Lessee shall be and remain liable not only for all rent payable up to the date of such termination, but also for all damage or loss suffered by lessor by reason of the termination of this lease under the terms of this subparagraph, whether through inability to re-let the Leased Premises on satisfactory terms or otherwise. Lessee agrees to pay Lessor on demand any deficiency that may arise by reason of any re-letting of the Leased Premises or for any expenditures in repair or remodeling necessary to effect such re-letting.

b) Proceed one or more times for past due installments of rent without prejudicing the right to proceed later for additional installments or to exercise any other remedy.

c) Declare the rent for the whole unexpired term of this lease due and payable and at once demand and receive payment of same.

d) Have recourse to any other remedy or mode of redress to which Lessor may be entitled by law.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies, either herein provided, or provided by law. Nor shall Lessor's failure to strictly and promptly enforce all of these conditions constitute a waiver of Lessor's right to do so, Lessor expressly reserving the right to declare the default at any time and take any such action as is lawful or authorized under this lease.

Lessee agrees that Lessor shall not be liable for any damages resulting to Lessee from any actions which Lessor may be required to take in effecting Lessee's compliance with the terms of this lease or in Lessor's use of any of the remedies provided in this paragraph or by law; and Lessee agrees to reimburse Lessor for any expenses Lessor shall incur in enforcing Lessee's compliance.

### 20. ATTORNEY'S FEES:

If, on account of any breach or default by Lessor or Lessee in its obligations under the terms and conditions of this lease, it shall become necessary for either party to employ an attorney to enforce or defend any of its rights or remedies hereunder, that party which prevails shall be entitled to receive from the other any reasonable attorney's fees incurred.

### 21. SURRENDER, HOLDING OVER:

Upon the termination of this lease in accordance with the terms hereof, Lessee shall quietly and peaceably deliver upon possession to Lessor, without any notice other than as may be required by the terms of this lease, of the Leased Premises in as good order repair and condition as the same are in at the beginning of the term of this lease, except for reasonable wear and tear or casualty loss or damage.

Should Lessee remain on the Leased Premises after the termination of this lease, Lessor has the option to interpret such action as creating a month-to-month lease under the same terms and conditions as this agreement except that the rent shall be two times the rent payable for the last month prior to said

termination, or to consider the holding over as a trespass, in the absence of a new written agreement between the parties hereto governing such a holding over.

22. **NOTICE, LEGAL ADDRESSES:**

a) All rent and other payments required to be made by Lessee shall be payable to Lessor at the address set forth below, or any other address Lessor may specify from time to time by written notice to Lessee.

b) Any notice or document required or permitted to be delivered under the terms of this lease shall be deemed to be delivered (whether or not actually received) when deposited in the United States mail, postage prepaid, certified mail, addressed to the parties at their respective addresses set out below:

| LESSOR: | LESSEE: |
|---|---|
| ROBERT W. MERRICK | RECORD MASTERS |
| 800 Commn Street, Suite 1000 | Mark Guidry |
| New Orleans, LA 70112 | 6200 Humphreys Street, Unit F |
| | Harahan, LA 70123 |

23. **LANGUAGE, CAPTION:**

Words of any gender used in this lease shall be held and construed to include any other gender, and words in singular number shall be held to include the plural, unless the context requires otherwise.

24. **ENTIRE AGREEMENT:**

It is expressly agreed by Lessor and Lessee that this lease is the entire agreement between them, and that there are no representations, understandings, stipulations, agreements or promises, verbal or written, which are not contained in this lease. It is likewise agreed that this lease may not be altered, amended, waived or extended except by an instrument in writing, signed by both Lessor and Lessee.

25. **FURTHER IMPROVEMENTS BY LESSOR:**

Lessor will commence as soon as possible to consolidate electrical serve and cut access to consolidate Unit F; construction to be at Lessor's sole cost and expense and to be accomplished as rapidly as possible in a good workmanlike manner.

EXECUTED THIS __28__ DAY OF __APRIL__, 1997

WITNESSES:

_____

(Lessor):
ROBERT W. MERRICK
_____

(Lessee):
HIMSCORP OF NEW ORLEANS, INC.
d/b/a RECORD MASTERS

Melissa S. Mitchum          BY: _____

IMIM_000130



IMIM_000131